UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JAMES M. TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 15-7-ART |
| | ) | |
| v. | ) | |
| | ) | |
| THE PEPSI BOTTLING GROUP INC. | ) | **MEMORANDUM OPINION** |
| LONG-TERM DISABILITY PLAN, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

Plaintiff James M. Terry has filed a motion to remand, alleging that his complaint states a claim only under state law and does not come within the scope of the civil enforcement provision of the Employment Retirement Income Security Act ("ERISA"). *See* R. 10 (Motion to Remand). The Pepsi Bottling Group Inc. Long-Term Disability Plan ("PBG")[1] disagrees, instead moving for dismissal or, in the alternative, change of venue pursuant to a forum selection clause. *See* R. 7 (Motion to Dismiss/Change Venue). Because the complaint states an independent claim for breach of contract, the Court does not have jurisdiction and the case must be remanded to state court.

## BACKGROUND

This dispute arises out of the workers' compensation settlement agreement between Terry and his former employer, Pepsi Bottling Group ("Pepsi"). Pepsi administered the PBG Plan. R. 1-1 ¶ 4. While working for Pepsi, Terry suffered a workplace injury. R. 10-1 at 1. In February 2011, the parties settled his ensuing workers' compensation claim. *Id.* The settlement

---

[1] The defendant explains that The Pepsi Bottling Group Inc. Long-Term Disability Plan no longer exists and participants originally in that plan are now participants in the PepsiCo Long Term Disability Program. R. 1 at 1 n.1. Neither party contends that this change materially affects the analysis here. The Court will use PBG to refer to the defendant.

agreement contained the following promise regarding Terry's ERISA benefits: "In further consideration of this settlement, the PBG Plan agrees that it will not seek nor be entitled to any recoupment/offset/reduction in regard to LTD benefits due to other benefits paid. Plaintiff's eligibility for LTD benefits is not offset." R. 10-2 at 3.[2]

Terry alleges that, in December 2011, PBG started to offset his LTD benefits by the amount he received in Social Security Disability benefits. R. 1-1 ¶ 6. Terry filed a complaint in Letcher Circuit Court for breach of contract, claiming that PBG's actions violated the terms of the settlement agreement. *Id.* Importantly, Terry did not allege that PBG violated a provision of the Plan. Rather, he grounded his cause of action solely in the terms of the settlement agreement. For relief, Terry requested payment of the benefits he would have received but for the breach of contract and a declaration that the offset of benefits was a breach of contract. *Id.* ¶ 7. PBG timely removed the case to this Court, asserting that the Court had jurisdiction because Terry "seeks to recover Pepsi Plan benefits" under ERISA. R. 1 at 2–3 (citing ERISA § 502(a), 29 U.S.C. § 1132(a)).

## DISCUSSION

A defendant may remove to federal district court only those cases "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have jurisdiction where the "plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). These cases are known as "federal question" cases. *Id.* If the plaintiff's complaint states a claim only under state law (absent the elements

---

[2] The parties do not dispute that the PBG Plan is an ERISA plan, that LTD benefits refer to long-term disability benefits, or that Pepsi is the administrator of the PBG Plan. *See* R. 13 at 3. PBG cursorily states that the PBG Plan "was not a party" to the settlement agreement. R. 12 at 2. PBG, however, makes no further argument regarding the relevance of this fact. As a result, the Court will not consider it in the analysis. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

required for diversity jurisdiction), federal courts generally do not have federal-question jurisdiction.

Terry's complaint alleges a breach of the settlement agreement—a purely state-law issue. *See Cogent Solutions Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) ("A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" (quoting *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992))). No federal issue appears on the face of his complaint. As a result, the Court does not have federal-question jurisdiction. Further, PBG, which bears the burden of establishing jurisdiction, does not allege any other basis for federal-court jurisdiction, such as diversity jurisdiction. *See Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007). Accordingly, his case belongs in state court. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

Even though the face of the complaint does not contain a federal question, PBG contends that the Court nonetheless has jurisdiction based on ERISA. ERISA, however, does not change the result. In certain cases, ERISA completely preempts a state law cause of action, which permits a federal court to exercise jurisdiction even where the federal cause of action is absent from the face of the well-pleaded complaint. *Metro. Life*, 481 U.S. at 62–63. Complete preemption creates federal jurisdiction because when Congress "completely pre-empt[s] a particular area[,]" then "any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64.

To establish federal-court jurisdiction based on complete preemption under ERISA, the party seeking removal must demonstrate that the state-law claim comes "within the scope of the

3

civil enforcement provisions of [ERISA] § 502(a)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). The relevant provision here, § 502(a)(1)(B), states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A state-law claim falls "within the scope" of § 502(a)(1)(B) only if the removing party (the defendant) establishes both prongs of the following two-prong test: (1) the plaintiff "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)"; and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) (explaining that the test "is in the conjunctive" (quoting *Marin Gen. Hosp. v Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009))). Because the settlement agreement between Terry and Pepsi establishes an independent legal duty, removal is not appropriate and analysis of the first prong is unnecessary.

A duty is independent from ERISA where it "is not derived from, or conditioned upon, the terms of" the ERISA plan. *Gardner*, 715 F.3d at 614; *see Davila*, 542 U.S. at 210 (holding that duty was not independent where the potential liability under state law "derives entirely from the particular rights and obligations established by the benefit plans"). Terry's complaint alleges that PBG's duty to not offset LTD benefits arose from the workers' compensation settlement agreement, not from the terms of the PBG Plan. R. 1-1 at ¶6.

He is correct. Assume that the Plan provides for a payment to Terry of $1000 in LTD benefits each month and that Terry also receives $500 each month from Social Security.[3] The parties do not dispute that the terms of the Plan require the offset of LTD benefits by the Social

---

[3] For purposes of this opinion, and because the parties do not discuss the actual amounts at issue, the Court assigns numerical values to simplify the analysis.

4

Security Disability benefits received by the beneficiary. Applying those terms, Terry may receive only $500 each month in LTD benefits. Now, add the wrinkle of the separate promise between Terry and Pepsi: the settlement agreement states that the PBG Plan will not offset the LTD benefits. R. 10-2 at 3. What is the effect of that agreement? No party suggests that the agreement altered the terms of the Plan itself, and accordingly the Court will assume that the Plan terms remained the same. Because the Plan's terms have not changed due to the agreement, it follows that the duty of PBG under the terms of the Plan also has not changed—to offset benefits if Terry receives other income. While the agreement does not change PBG's duty under the Plan, it does create a separate duty under state contract law. *See Kokkonen*, 511 U.S. at 381.

A reasonable interpretation of the agreement, and PBG's corresponding duty, is that PBG must independently pay Terry the amount that would otherwise have been offset pursuant to the Plan terms. Using the hypothetical figures above, PBG could meet that obligation by sending Terry a separate check each month for $500. That separate check is not required by the terms of the Plan, but rather from the terms of the settlement agreement. Thus, the agreement creates an independent legal duty divesting the Court of jurisdiction.

That intuitive result finds support in the Sixth Circuit's decision in *Gardner* as well as cases outside the Sixth Circuit. The plaintiffs in *Gardner*, participants in their employer's retirement plan, alleged that an investment firm's involvement in the dissolution of that retirement plan violated a state-law duty to not interfere with the plan. The court held that remand was appropriate because the duty "arises under [state] tort law, not the terms of the [ERISA plan] itself." *Gardner*, 715 F.3d at 614. Even though the terms of the ERISA plan "would likely be relevant in measuring the amount of Plaintiffs' damages," the duty to not interfere was a creature of state law independent of ERISA. *Id.* at 615.

5

In so holding, the court heavily relied on two contrasting Second Circuit cases, both which provide helpful guidance here. *See Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56 (2d Cir. 2010); *Arditi v. Lighthouse Int'l*, 676 F.3d 294 (2d Cir. 2012). In *Stevenson*, the plaintiff, a participant in his employer's retirement plan, was asked to switch jobs to an affiliated entity. If he accepted the move, however, he would lose his retirement plan benefits. To sweeten the deal, his employer "promised to maintain Stevenson's status as a plan participant." *Gardner*, 715 F.3d at 614. Later, however, the employer backed out of the promise. Stevenson sued for breach of contract, and the employer removed to federal court. The *Stevenson* court held that there was no federal question jurisdiction because the contract between the employer and the plaintiff regarding his plan status created an independent legal duty. *Stevenson*, 609 F.3d at 59–61. Specifically, the employer's "asserted liability under the original complaint d[id] not derive from the particular rights and obligations established by any benefit plan, but rather from a separate promise." *Id.* at 60 (alterations and quotation marks omitted); *see Gardner*, 715 F.3d at 614 ("[T]he Bank's obligation to maintain Stevenson's status as a participant did not derive from the plan—indeed, the plan said the opposite—but instead arose from a 'separate promise' made by the Bank.").

*Arditi v. Lighthouse International* involved an employment agreement between Arditi and his employer, Lighthouse. 676 F.3d at 298. The agreement "recited Lighthouse's obligations to the plaintiff (Arditi) under Lighthouse's pension plan." *Gardner*, 715 F.3d at 613. Lighthouse later denied Arditi benefits, and Arditi sued under state law for a breach of the agreement. Lighthouse removed, and the Second Circuit agreed that removal was proper because ERISA completely preempted Arditi's complaint. 676 F.3d at 299. The court distinguished Arditi's claims from those asserted in *Stevenson*. The plaintiff's rights in

6

*Stevenson* "arose not from the bank's plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan." *Id.* at 300. By contrast, Arditi's rights "arose from, and were governed by, the terms of the Plan." *Id.* His agreement with his employer promised no more, and no less, than what the Plan itself contained. *Id.* ("The Plan provided more than a mere benchmark for calculating damages; indeed, it was the basis for the claimed benefits."). As a result, ERISA completely preempted Arditi's state-law claims.

The Ninth Circuit's decision in *Marin General Hospital* is also instructive. 581 F.3d 941, 947 (9th Cir. 2009). The plaintiff was a hospital that had been assigned a patient's beneficiary rights under an ERISA plan. *Id*. Before treating the patient, the hospital called the ERISA plan administrator to confirm that the plan would pay 90 percent of the patient's medical expenses. *Id.* at 943. The plan administrator agreed. *Id.* When the time for payment arrived, the plan did not pay 90 percent of the expenses, asserting that the plan terms required only a lesser amount. *Id.* at 943–44. The hospital sued under state law for various claims, including breach of contract. The defendants removed to federal court.

On appeal, the Ninth Circuit reversed and remanded to state court. Assessing the motion to remand under the two-prong *Davila* test, the Ninth Circuit focused on the fact that the hospital "does not contend that it is owed this additional amount because it is owed under the patient's ERISA plan," but rather it argued "that this additional amount is owed based on its alleged oral contract with [the plan administrator]." *Id.* at 947. Because the plan's duty to pay the hospital arose from the oral contract and was absent from the terms of the plan, ERISA did not completely preempt the hospital's claims, and federal courts lacked jurisdiction. *Id.* at 947–48 ("[T]he asserted obligation to make the additional payment stems from the alleged oral contract between the Hospital and [the plan administrator].")

Terry's complaint is more similar to *Marin* and *Stevenson* than *Arditi*. Terry admits, and PBG does not dispute, that the terms of the PBG Plan do not allow for the specific payment of the benefits that Terry seeks. The sole source of PBG's duty to pay the specific benefits at issue is the settlement agreement. That agreement is similar to the hospital's contract in *Marin*. Both contracts allegedly bound the respective Plans to pay certain benefits not required by the Plans themselves. It is possible that in Terry's case the amount can only be determined by looking at the Plan's terms, but that does not create a cause of action under ERISA. *See Gardner*, 715 F.3d at 615 (holding that, while the ERISA plan's "terms would likely be relevant in measuring the amount of Plaintiffs' damages[,] . . . that is beside the point for purposes of *Davila*'s second prong"). Consequently, ERISA does not completely preempt the complaint and the case must be remanded to state court.

When a case is remanded, the court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Terry makes a one-sentence request for costs and actual expenses, including attorney fees, without any argumentation or even a citation to the statute. R. 10 at 1. Barring "unusual circumstances," awarding attorney fees is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Conversely, when an objectively reasonable basis exists, fees should be denied."). To receive a fee award, the non-removing party must "establish that the . . . removal attempt was not objectively reasonable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008). The *Warthman* court applied the same standard to a request for costs. *Id.* Terry, however, makes no argument as to whether PBG's removal was unreasonable (nor does he include the amount of fees and costs requested). Moreover, given the complexity of ERISA

preemption, PBG had an objectively reasonable basis for removal. Therefore, the request for costs and fees is denied.

Accordingly, it is **ORDERED** that:

(1)  Terry's motion to remand, R. 10, is **GRANTED**. The case is **REMANDED** to Letcher Circuit Court. Terry's request for fees and costs, R. 10, is **DENIED**.

(2)  PBG's motion to dismiss or, in the alternative, change venue, R. 7, is **DENIED AS MOOT**.

(3)  All pending motions are **DENIED AS MOOT**, and this case shall be **STRICKEN** from the Court's active docket.

This the 14th day of April, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge